**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emma Graham,<br><br>Plaintiff,<br><br>v.<br><br>United Services Automobile Association,<br><br>Defendant. | No. CV-20-02210-PHX-DWL<br><br>**ORDER** |

Plaintiff Emma Graham ("Graham") has asserted discrimination and retaliation claims under Title VII and 42 U.S.C. § 1981, as well as a state-law claim for intentional infliction of emotional distress, against her former employer, Defendant United Services Automobile Association ("USAA"). USAA now moves to compel arbitration and dismiss this action. (Doc. 5). For the following reasons, USAA's motion is granted.

## BACKGROUND

"It is permissible to consider evidence outside the pleadings when resolving a motion to compel arbitration." *Scott-Ortiz v. CBRE Inc.*, 501 F. Supp. 3d 717, 721 (D. Ariz. 2020). "To the extent there are conflicts in the evidence submitted by the parties, the court applies a standard similar to that applicable for a motion for summary judgment." *Id.* (internal quotation marks omitted). Here, USAA was the only party to submit evidence,[1] so the Court derives the following facts from USAA's evidence, while using the allegations in the complaint where appropriate to provide background.

---

[1] The exception is the right-to-sue letter attached to the complaint. (Doc. 1-2.)

I.  The Arbitration Agreement

Graham was initially hired by USAA in 2006, resigned shortly after being hired, and was rehired in April 2007. (Doc. 5-1 at 1 ¶ 4.) Graham initially worked as a bank servicing specialist and later came to hold several different positions, including fraud prevention and detection manager. (*Id.* at 1 ¶¶ 4-5.)

In April 2007, upon her rehiring, Graham signed a one-page document entitled "Notice and Agreement Concerning Dialogue: The USAA Dispute Resolution Program" (hereinafter the "Agreement"). (*Id.* at 2 ¶ 10.)[2] In the paragraph above her signature, the Agreement stated as follows:

> I consent, along with USAA, to be bound by the terms of the Program. I acknowledge having received the above-referenced documents, and that I have familiarized myself with this material. I understand that the Program establishes a variety of options and resources to resolve work-related disputes. **I understand that any dispute covered by the Dialogue Program that cannot be resolved by mutual agreement, must be submitted to final and binding arbitration, instead of to the court system.** This includes any disputes relating to my employment, and any termination of my employment (including events that may occur after termination of employment). I understand that this means that USAA and I are waiving any right we may have to bring a lawsuit and to a jury trial concerning any dispute covered by the program. I understand and agree that the terms of the program are a condition of my employment. I also understand that the Program is not a contract of employment for any specific period of time and does not affect either my or USAA's legal rights except as expressly stated in the Program itself.

(*Id.* at 39, emphasis in original.)

A copy of the actual Dialogue Program was made available to Graham at the time she signed the Agreement. (*Id.* at 2 ¶ 7. *See also id.* at 39 ["Included with this NOTICE are . . . the Dialogue guide, which summarizes the Program . . . [and] the Program Description and Rules, which provides a more formal and complete statement of the terms of the Program."].) Consistent with summary provided in the Agreement, the Dialogue

---

[2] Graham signed the Agreement using her former name of Ewa Zielonka. (Doc. 5-1 at 1 ¶ 4; *id.* at 39.) There is no dispute that Graham was the signer. (Doc. 6 at 2 ["[I]t is true that Plaintiff signed an arbitration agreement with USAA . . . ."].)

Program provides that "Arbitration under Dialogue, rather than trial before a court or jury, is the final, exclusive, and binding means for resolving all Disputes that are not otherwise settled or resolved by the Parties, regardless of whether a Party asserts additional claims that are not within the scope of Dialogue." (*Id.* at 9.) It further defines the term "Dispute" as encompassing "all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, . . . between the Company and an Employee . . . including, but not limited to, . . . any other matter relating to or concerning the relationship between the Employee and the Company including, by way of example and without limitation, allegations of discrimination based on race . . . national origin . . . or other legally protected characteristic; . . . legally prohibited retaliation; . . . [and] infliction of emotional distress." (*Id.* at 7.)

II.  The Alleged Discrimination And Retaliation

In the complaint, Graham alleges that she is an American citizen of Polish descent who "is visibly a member of an Eastern European race and does not speak English as her first language." (Doc. 1 ¶¶ 8, 38.) She alleges that she began to experience racial and national origin discrimination shortly after joining USAA. (*Id.* ¶ 11.) The alleged acts of discrimination included "excessive coaching, public humiliation, and reprimands which her peers were not." (*Id.*) Graham alleges this work environment caused her to experience anxiety and depression. (*Id.* ¶ 12.) Graham eventually filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging national origin discrimination. (*Id.* ¶ 10.) After filing this claim, Graham began to experience more harassment and discrimination, allegedly as retaliation for filing the EEOC charge. (*Id.* ¶ 13.) She became the "butt of jokes" and "all her co-workers stopped talking to her." (*Id.* ¶ 15.) She also alleges that USAA retaliated against her by "subjecting her to repeated reprimands and ultimately termination." (*Id.* ¶ 16.)

On July 1, 2020, USAA terminated Graham's employment. (*Id.* ¶ 9.)[3]

On August 19, 2020, the EEOC issued a right-to-sue letter to Graham. (Doc. 1-2.)

---

[3] The evidence submitted by USAA suggests the termination date was actually June 4, 2020 (Doc. 5-1 at 1 ¶ 5), but this factual dispute is immaterial.

- 3 -

On November 17, 2020, Graham filed the complaint. (Doc. 1.) It asserts the following claims: (1) a claim under Title VII for race and national origin discrimination; (2) a claim under Title VII for retaliation; (3) a claim under 42 U.S.C. § 1981 for race and national origin discrimination and retaliation; and (4) a state-law claim for intentional infliction of emotional distress. (*Id.*)

On March 5, 2021, USAA filed a motion to dismiss and compel arbitration. (Doc. 5.)

On March 15, 2021, Graham filed an opposition to USAA's motion. (Doc. 6.)

On March 22, 2021, USAA filed a reply. (Doc. 7.) Neither side requested oral argument.

**DISCUSSION**

I. Legal Standard

The Federal Arbitration Act ("FAA") applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. This includes employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113-15 (2001). The FAA provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable" barring any valid contractual defense. 9 U.S.C. § 2. Thus, absent a valid contractual defense, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The district court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, 2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

II. Analysis

USAA argues the Agreement is enforceable because Graham validly consented to it and her claims in this action fall within its scope. (Doc. 5 at 6-8.) USAA also notes that "[t]he Arizona District Court has upheld the validity of USAA's Dialogue Program in three

separate cases." (*Id.* at 9.)  In response, Graham makes the following arguments: (1) Title VII claims aren't subject to mandatory arbitration under the FAA, in part because they don't qualify as claims involving "commerce"; (2) at a minimum, she "did not knowingly" agree to arbitrate Title VII claims; and (3) the Agreement is invalid because it is "nothing more than an unconscionable contract of adhesion," as "[t]here was no negotiating the arbitration agreement, there was no meeting of the minds inherent in any valid enforceable agreement, and there was no opportunity for Plaintiff to consult with a lawyer prior to signing it." (Doc. 6.)

Graham's arguments are unavailing.  First, Ninth Circuit law is crystal clear that "a party to an arbitration agreement [may] waive knowingly and explicitly their right to judicial determination of their Title VII claims." *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021).  Graham's arguments to the contrary are based on cases that were overruled or superseded by statute many years ago.  For example, Graham relies heavily on *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1185 (9th Cir. 1998), which held that "employers may not by such means compel individuals to waive their Title VII right to a judicial forum," but *Duffield* is no longer good law on this point.  *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 749 (9th Cir. 2003) (en banc) ("In *Duffield*, we held that for Title VII claims, the 1991 Act precludes enforcement of arbitration agreements entered into as a condition of employment. . . .  On reconsideration en banc, we now conclude that our holding in *Duffield* was in error.").  *See also Ashbey v. Archstone Property Management, Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) ("Before 1991, Title VII had been interpreted to prohibit any waiver of its statutory remedies in favor of arbitration.  But Congress reversed course with amendments to Title VII in the Civil Rights Act of 1991.") (citations and internal quotation marks omitted); *Lambert v. Tesla, Inc.*, 923 F.3d 1246, 1250 (9th Cir. 2019) ("Applying *Gilmer* through the lens of *Luce, Forward* leads to the conclusion that § 1981 claims, like Title VII claims, are arbitrable.").

Second, Graham knowingly agreed to arbitrate Title VII claims.  In *Ashbey*, the Ninth Circuit held that an employee knowingly agreed to arbitrate his Title VII claim

because (1) he was provided with an acknowledgement form that "explicitly notified" him the employee manual contained a dispute resolution policy; (2) he signed the acknowledgement form; (3) the underlying policy was made available to him; and (4) the policy expressly stated that it covered employment-related disputes, including claims of harassment and discrimination under the Civil Rights Act of 1964. 785 F.3d at 1325-26. The facts of this case are nearly identical and, if anything, present an even stronger case for a finding of knowing waiver—Graham was presented with the Agreement, which not only advised her of USAA's dispute resolution policy but specifically stated that she was agreeing to arbitrate future claims (including employment-related claims); she signed the Agreement; the underlying policy was made available to her; and the policy expressly stated that it encompassed "all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, . . . between the Company and an Employee . . . including, but not limited to, . . . any other matter relating to or concerning the relationship between the Employee and the Company including, by way of example and without limitation, allegations of discrimination based on race . . . national origin . . . or other legally protected characteristic" and "legally prohibited retaliation." (Doc. 5-1 at 3.) These details easily distinguish this case from the Ninth Circuit decisions in which agreements to arbitrate Title VII (and other statutory) claims were deemed unknowing and unenforceable. *See, e.g., Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1301-05 (9th Cir. 1994) (knowing waiver requirement not satisfied because arbitration was never mentioned, the plaintiffs never received the document containing the arbitration provision, and the "provision did not even refer to employment disputes"); *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 761 (9th Cir. 1997) (knowing waiver requirement not satisfied because "[n]othing in that acknowledgment [form] notified Nelson either that the Handbook contained an arbitration clause or that his acceptance of the Handbook constituted a waiver of his right to a judicial forum in which to resolve claims covered by the ADA"); *Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153, 1155 (9th Cir.1998) (knowing waiver requirement not satisfied because "[t]he

Acknowledgement did not notify Kummetz that the Booklet contained an arbitration provision, nor did it mention or imply anything about employment-related disputes, civil rights statutes, or waivers of remedies").

Third, there is no merit to Graham's argument that the Agreement is invalid due to procedural unconscionability. Procedural unconscionability "arises from unfairness in the bargaining process" and "is concerned with 'unfair surprise,' fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Edwards v. Vemma Nutrition*, 2018 WL 637382, *4 (D. Ariz. 2018). Thus, "[m]ere inequality in bargaining power is not sufficient to invalidate an arbitration agreement. Moreover, an agreement may be enforceable even if the terms offered are not negotiable. Even if the weaker party does not understand all of the terms included in an agreement, the agreement may be enforceable if it is consistent with reasonable expectations and not unduly oppressive." *EEOC v. Cheesecake Factory, Inc.*, 2009 WL 1259359, *3 (D. Ariz. 2009) (citations omitted). "[T]he fundamental question is whether one party to a contract has unfairly or surreptitiously deprived the other of the right of access to the courts." *Duenas v. Life Care Centers of Am., Inc.*, 336 P.3d 763, 768 (Ariz. Ct. App. 2014).

These principles foreclose Graham's claim of procedural unconscionability. The Agreement was less than one page long, the arbitration-related language was written in plain English that would be comprehensible to a non-lawyer, and the language was set out in bold font to ensure Graham saw it. Moreover, Graham has conspicuously failed to submit any *evidence* that she was somehow confused by the Agreement or failed to notice or comprehend it—the attorney-drafted assertions to that effect appearing in her response brief are not cognizable evidence.

Graham's core argument is that the Agreement is unconscionable because it was presented to her on a take-it-or-leave-it basis, without any opportunity for negotiation. But courts applying Arizona law have repeatedly upheld the enforceability of arbitration clauses within employment contracts, even if the employee was relatively unsophisticated

and was unable to negotiate the contractual terms. *See, e.g., Longnecker v. Am. Express Co.*, 23 F. Supp. 3d 1099, 1108 (D. Ariz. 2014) (rejecting procedural unconscionability challenge, where employees argued "they were required to agree to the Arbitration Policy as a condition of employment and . . . had no ability to negotiate the terms of the agreements," because "even if the arbitration agreements were contracts of adhesion that would not mean that they are procedurally unconscionable"); *Underwood v. Chapman Bell Road Imports, LLC*, 2013 WL 1289528, *1 (D. Ariz. 2013) (rejecting procedural unconscionability challenge, where employee argued that "she has a limited education and lacks business experience," the defendant "gave her the Agreement to sign in the middle of a busy work day," and she "did not understand the concept of arbitration at the time," where "the terms of the Agreement are not unusual for employment contracts, and this Court has not found procedural unconscionability in similar situations"); *Monsanto v. DWW Partners, LLLP*, 2010 WL 234952, *3 (D. Ariz. 2010) ("There is no evidence of procedural unconscionability. Plaintiff maintains that he was required to enter the agreements to gain employment and he lacked an ability to negotiate their terms. However, these factors merely point to the agreements being contracts of adhesion, which are fully enforceable unless contrary to reasonable expectations or otherwise unconscionable."); *Cheesecake Factory*, 2009 WL 1259359 at *3 (rejecting procedural unconscionability challenge, where employees argued they were "presented [with] a standardized 'take it or leave it' unilaterally drafted form" and "did not know or understand what 'arbitration proceedings' meant," because "[t]hey offer no evidence that [the employer] attempted to deceive them" and "an agreement may be enforceable even if the terms offered are not negotiable"). *See generally Rizzio v. Surpass Senior Living LLC*, 459 P.3d 1201, 1206 (Ariz. Ct. App. 2020) ("The superior court's factual findings here do not establish procedural unconscionability. Instead, at most they demonstrate that the Agreement was akin to a standardized adhesion contract. . . . Such contracts are not *per se* unconscionable and, instead, are typically enforceable.").

It is also worth noting that judges in this District have thrice rejected procedural

unconscionability challenges to USAA arbitration agreements that appear to be the same or closely analogous to the one at issue here. *O'Bannon v. United Servs. Auto. Ass'n*, 2016 U.S. Dist. LEXIS 186581, *8 (D. Ariz. 2016) ("[T]he arbitration agreement in the Dialogue program is not a procedurally unconscionable contract of adhesion."); *Russ v. United Servs. Auto. Ass'n*, 2017 WL 1953458, *3 (D. Ariz. 2017) ("[A]nother Judge of this Court has already determined that the same USAA Dialogue Program arbitration agreement at issue here is not a procedurally unconscionable adhesion contract. The Court agrees with that position.") (citation omitted); *Pinto v. USAA Ins. Agency Inc. of Tex.*, 275 F. Supp. 3d 1165, 1169 (D. Ariz. 2017) ("Judges of this Court have twice found that the USAA arbitration agreement at issue here is not procedurally unconscionable. The undersigned judge agrees.") (citations omitted). Graham tellingly makes no effort to acknowledge these decisions, let alone explain why all of them were wrongly decided or distinguishable.

Because the Agreement is valid and "encompasses the dispute at issue," *Chiron Corp.*, 207 F.3d at 1130, USAA's motion to compel Graham to proceed to arbitration is granted. Graham must proceed in an individual capacity.

As a final matter, USAA asks that this action be dismissed upon the granting of its motion to compel arbitration. Although § 3 of the FAA provides that a district court "shall on application of one of the parties" issue a "stay" in an action that has been found referable to arbitration, *see* 9 U.S.C. § 3, neither party in this case requested a stay—USAA requested dismissal upon the granting of its motion to compel arbitration while Graham was silent as to what should happen with the underlying case should USAA's motion to compel be granted. Under these circumstances, it appears the Court has authority to "stay or dismiss" the action. *Kam-Ko Bio-Pharm Trading Co. Ltd.-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 940 (9th Cir. 2009). *See also Scott-Ortiz*, 501 F. Supp. 3d at 729-30 & n.3. Accordingly, the action is dismissed.[4]

---

[4] USAA states, at the conclusion of its motion, that "[u]pon entry of an order of dismissal, USAA intends to seek its attorneys' fees in accordance with Local Rule 54.2, pursuant to A.R.S. § [12-]341.01." (Doc. 5 at 9.) USAA is free to file whatever motion it deems appropriate, but should USAA go down this route, it should make sure to address *Perry v. NorthCentral University, Inc.*, 2012 WL 1753014, *2 (D. Ariz. 2012) (denying request for attorneys' fees under A.R.S. 12-341.01 because "the defendants should not now

Accordingly,

**IT IS ORDERED** that USAA's motion to dismiss and compel arbitration (Doc. 5) is **granted**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly and terminate this action.

Dated this 2nd day of July, 2021.

_____
Dominic W. Lanza
United States District Judge

---

be awarded their attorneys' fees for succeeding, as of the time their fees motion was filed, on nothing more than effecting a change in the forum charged with deciding the merits of the plaintiff's claims").